THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| STEVE WALKER; SHERRY WALKER; and APPLE STREET ONE TWENTY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MAGHSOOD ABBASZADEH; AYYOOB ABBASZADEH; SABA55 LLC; ZIBALAND, LLC; HIGHLANDPLEX, LLC; NEDA, LLC; MEGA REAL, LLC, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [15] DEFENDANTS' MOTION TO DISMISS** <br><br> Case No. 2:23-cv-00912-DBB-CMR <br><br> District Judge David Barlow |

Plaintiffs Steve Walker, Sherry Walker, and Apple Street One Twenty, LLC (collectively "Plaintiffs") allege that Defendants Maghsood Abbaszadeh, Ayyoob Abbaszadeh, SABA55 LLC, Zibaland, LLC, Highlandplex, LLC, Neda LLC, and Mega Real, LLC (collectively "Defendants")[1] violated the Thirteenth Amendment to the U.S. Constitution, 18 U.S.C. § 1589 and the Utah Sales Representative Commission Payment Act and committed a number of torts.[2] Defendants move to dismiss each of Plaintiffs' claims.[3] For the following reasons, the court grants Defendants' motion.

---

[1] Because multiple individuals in this case share a surname, the court will refer to them by their given names, for clarity.
[2] *See* Am. Compl. ¶¶ 154–259, ECF No. 13.
[3] Defs.' Mot. to Dismiss Am. Compl. ("Defs.' Mot."), ECF No. 15.

## BACKGROUND

Steve and Sherry Walker are a married couple who have worked in construction and construction management for many years.[4] Maghsood and Ayyoob Abbaszadeh are brothers, who own several companies, including the entity Defendants in this case.[5] In 2002, Ayyoob sold Steve an apartment complex in Oklahoma for $1,927,500.[6] Subsequently, Steve, Ayyoob, Maghsood, and Sherry formed SAMS, LLC for the purpose of buying the apartments.[7] In 2003, the parties executed a lien against the apartments for $382,000 under which Ayyoob was to receive $200,000 and Steve was to receive $182,000.[8] Next, the Amended Complaint alleges that Maghsood "induced" Steve to sign an agreement to purchase the apartment complex outright, and that Steve "unknowingly assumed" the debt related to the apartments and released his lien against the apartments.[9] The Amended Complaint alleges a series of loans and related payments between the Abbaszadeh brothers and the Walkers around that same time period.[10] It then alleges that in 2005, Maghsood placed two "unsubstantiated" liens on the Walkers' primary residence, totaling over $140,000.[11]

In 2006, the apartments were sold for over $2,000,000.[12] The Amended Complaint alleges that Steve was owed over $216,000 as part of this transaction, but that it never materialized; instead, Maghsood claimed that he was owed over $205,000.[13] Maghsood placed

---

[4] Am. Compl. ¶ 34.
[5] *Id.* ¶¶ 4–10.
[6] *Id.* ¶ 36.
[7] *Id.* ¶ 37.
[8] *Id.* ¶ 37.
[9] *Id.* ¶ 42; *see also* ¶ 43.
[10] *Id.* ¶¶ 37–38, 44–45, 54–57.
[11] *Id.* ¶¶ 49, 50.
[12] *Id.* ¶ 59.
[13] *Id.* ¶¶ 60, 64.

another lien on the Walkers' non-residential property for $215,000.[14] The Walkers allege that Maghsood agreed to release the two liens on their residence if they paid off the new $215,000 lien on the Walkers' non-residential property.[15] In 2007, the Walkers sold the non-residential property and paid Maghsood $236,000, but Maghsood did not release the liens on the Walkers' primary residence.[16]

In 2009, the Abbaszadeh brothers threatened to foreclose upon the Walkers' property.[17] This caused Sherry to feel compelled to become their full-time employee.[18] The Abbaszadeh brothers "assured" Sherry that her employment would lead to the amounts owed being "paid down."[19] Sherry initially received paychecks from Defendants but would always pay the entire amount back as payment for the supposed debts.[20] By 2017, however, Defendants stopped paying Sherry for her work "while still requiring her to work full time."[21] This continued until 2023.[22]

In 2011, the Walkers then signed a Trust Deed for $951,000.[23] According to the Amended Complaint, the Walkers signed the document without understanding it, and without being provided time to obtain counsel or review the document.[24] The Walkers believed they were signing a $272,250 loan, and that only $272,250 was distributed to them.[25] In 2014, the

---

[14] *Id.* ¶ 74.
[15] *Id.* ¶ 75.
[16] *Id.* ¶¶ 76–80.
[17] *Id.* ¶ 85.
[18] *Id.* ¶ 86.
[19] *Id.*
[20] *Id.* ¶¶ 87, 110.
[21] *Id.* ¶ 111.
[22] *Id.*
[23] *Id.* ¶ 100.
[24] *Id.* ¶¶ 98–101.
[25] *Id.* ¶¶ 93, 95–96, 103.

Trust Deed was amended to add liens for $300,000 on three Apple Street parcels and $276,147 on the Walkers' personal residence.[26] Cumulatively, the Abbaszadeh brothers had five liens on the Walkers' various assets totaling a principal amount of $1,618,297.[27] The brothers allege that they are owed over $7,000,000 total.[28]

With limited income, the Walkers allege that finances have been difficult over the last several years. Yet, according to the Amended Complaint, the loan balances have never dropped despite Sherry's work for Defendants.[29] Unable to pay property taxes, companies controlled by the Abbaszadeh brothers have been doing so on behalf of Plaintiffs since at least 2011.[30] The Abbaszadeh brothers foreclosed on Plaintiffs' Apple Street property in 2023.[31]

On February 16, 2024, Plaintiffs filed their Amended Complaint, which alleged 13 claims: violation of the Thirteenth Amendment; violation of 18 U.S.C. § 1589; fraud; violation of the Utah Sales Representative Commission Payment Act; wrongful liens; wrongful deeds; breach of the implied covenant of good faith and fair dealing; intentional infliction of emotional distress; intentional misrepresentation; unjust enrichment; quantum meruit; civil conspiracy; and respondeat superior.[32] On March 1, 2024, Defendants filed a motion to dismiss.[33] This motion was fully briefed on March 25, 2024.[34]

---

[26] *Id.* ¶¶ 120–22.
[27] *Id.* ¶ 124.
[28] *Id.* ¶ 153.
[29] *Id.* ¶ 145.
[30] *Id.* ¶¶ 91, 109.
[31] *Id.* ¶ 152.
[32] Am. Compl. ¶¶ 154–251.
[33] Defs.' Mot.
[34] *See* Pls.' Reply to Defs.' Mem. In Opp'n – Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 16; Defs.' Reply in Further Support of their Mot. to Dismiss Am. Compl. ("Defs.' Reply"), ECF No. 17.

**STANDARD**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[35] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36] The court does not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[37]

**DISCUSSION**

Defendants argue that Plaintiffs' federal claims fail as a matter of law, and therefore, that the court should decline to exercise supplemental jurisdiction over the remaining state law claims.[38] In the alternative, Defendants argue that Plaintiffs' state law claims fail as a matter of law as well.[39]

### I.   Thirteenth Amendment

Section 1 of the Thirteenth Amendment to the U.S. Constitution reads: "Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."[40] Section 2 of the Thirteenth Amendment provides that "Congress shall have power to enforce this article by appropriate legislation."[41] Defendants make three arguments urging dismissal of

---

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[36] *Id.*
[37] *Id.* at 678.
[38] Defs.' Mot. 11–20.
[39] *Id.* 20–31.
[40] U.S. Const. amend. XIII, § 1.
[41] *Id.* § 2.

Sherry's Thirteenth Amendment claim: there is no private right of action against private parties for violating the Thirteenth Amendment; her claim fails to allege specific facts about each Defendant; and her claim does not allege that she had no alternative than to work for Defendants.[42] Plaintiffs make no response to Defendants' arguments.[43]

The assertion that the Thirteenth Amendment does not reach private conduct does not square with the text of the Amendment and binding Supreme Court precedent. For starters, the text of the Thirteenth Amendment is distinguishable from the text of nearly every other amendment concerning individual rights in that it does not refer either to "Congress" or a "State."[44] No state action requirement appears on its face; it categorically forbids slavery from existing within the United States, which suggests that private actors are equally bound. And as early as 1883, in the *Civil Rights Cases*, the Supreme Court stated that the Thirteenth Amendment is "not a mere prohibition of State laws establishing or upholding slavery, but an absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States."[45] And indeed, more recently in *United States v. Kozminski*, the Supreme Court stated unequivocally that "the Thirteenth Amendment extends beyond state action[.]"[46]

---

[42] Defs.' Mot. 13–16.

[43] *Cf.* Pls.' Opp'n 3–5 (discussing Plaintiffs' Thirteenth Amendment claim); Defs.' Reply 5 ("Plaintiffs failed to even address Defendants' argument that there is no private cause of action under the Thirteenth Amendment.").

[44] *Compare* U.S. Const. amend. XIII, § 1("Neither slavery nor involuntary servitude . . . shall exist within the United States . . . .") *with id.* amend. I ("*Congress* shall make no law respecting the establishment of or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press . . . ." (emphasis added)) *and id.* amend. XIV, § 1 ("No *State* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (emphasis added)).

[45] *Civil Rights Cases*, 109 U.S. 3, 20 (1883).

[46] *United States v. Kozminski*, 487 U.S. 931, 942 (1988).

Defendants cite two district court cases that suggest that the Thirteenth Amendment does not reach private conduct.[47] In *Doe v. Siddig*, the District of District Columbia stated that "there is no private right of action under the Thirteenth Amendment," and even assuming that one existed, "it would not extend to a suit brought by 'one private individual' against 'another private individual[.]'"[48] And in *Mack v. J.M. Smucker Co.*, the District of Kansas briefly noted *Siddig*'s holding.[49] *Siddig* arrived at its conclusion without considering the text of the Thirteenth Amendment or either the *Civil Rights Cases* or *Kozminski*. Accordingly, the court does not find its analysis persuasive. Defendants' suggestion that the Thirteenth Amendment does not reach private conduct is incorrect, as it contravenes the plain text of the Amendment, as well as binding caselaw.

Turning to whether there is a private cause of action implied in the Thirteenth Amendment, the *Civil Rights Cases* state directly that the Thirteenth Amendment is "undoubtedly self-executing without any ancillary legislation" and that "[b]y its own unaided force it abolished slavery, and established universal freedom."[50] So the suggestion that, as a categorical matter, there is no implied right of action under the Thirteenth Amendment is not supported by binding caselaw. More specifically, the question in this case is whether any implied

---

[47] Defs.' Mot. 15.

[48] *Doe v. Siddig*, 810 F.Supp.2d 127, 135–36 (D.D.C. 2011) (quoting *Bhagwani v. Howard Univ.*, 355 F.Supp.2d 294, 302 (D.D.C. 2005)).

[49] No. 21-4038, 2021 WL 4476792, at *4 (D. Kan. Sept. 30, 2021) ("[I]t is noted that other courts have held that the Thirteenth Amendment does not support a private right of action against a private entity." (citing *Siddig*, 810 F.Supp.2d at 135–36)).

[50] *Civil Rights Cases*, 109 U.S. at 20; *see also Clyatt v. United States*, 197 U.S. 207, 216 (1905) ("[The Thirteenth Amendment] denounces a status or condition, irrespective of the manner or authority by which it is created. The prohibitions of the [Fourteenth] and [Fifteenth] Amendments are largely upon the acts of the states' but the [Thirteenth] Amendment names no party or authority, but simply forbids slavery and involuntary servitude[.]"); *Kozminski*, 487 U.S. at 942.

right of action under the Thirteenth Amendment includes a damages claim.[51] The Supreme Court

has only rarely inferred a private cause of action for damages from the U.S. Constitution.[52] And

one of the chief concerns the Court has voiced in asking this question has been "whether any

alternative, existing process for protecting the [constitutionally recognized] interest amounts to a

convincing reason for the Judicial Branch to refrain from providing a new and freestanding

remedy in damages."[53] Here, there appears to be just such another process for protecting the

interests established by the Thirteenth Amendment. 18 U.S.C. § 1595 provides a civil remedy to

any "individual who is a victim" of forced labor, among other things.[54] Because there is a federal

statutory remedy for the same injury and because Plaintiffs have not made any argument

regarding why the court should infer a damages remedy from the Thirteenth Amendment, the

court will not do so.[55]

Accordingly, Plaintiffs' Thirteenth Amendment claim is dismissed, and the court need

not reach the remaining issues particular to this claim identified by Defendants.

## II.   18 U.S.C. § 1589

18 U.S.C. § 1589 prohibits any person from knowingly providing or obtaining the labor

or services of another person:

(1) by means of force, threats of force, physical restraint, or threats of physical
restraint to that person or another person;

---

[51] *Cf.* Am. Compl. ¶¶ 158–59.
[52] *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 389, 365–97 (1971) (holding that a claim for damages under the Fourth Amendment against federal officers was available); *Minneci v. Pollard*, 565 U.S. 118, 122–125 (2012) (compiling caselaw determining whether to grant a *Bivens* remedy under various constitutional amendments).
[53] *Minneci*, 565 U.S. at 122–23 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (alteration in original)).
[54] 18 U.S.C. §§ 1595, 1589.
[55] This conclusion is in accord with what little circuit authority there is on this issue. *See Smith v. Kentucky*, 36 F.4th 671, 674–75 (6th Cir. 2022).

8

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.[56]

18 U.S.C. § 1595 provides a civil action for violation of Section 1589.[57]

Defendants argue: (A) that Plaintiffs engage in impermissible group pleading; (B) that Plaintiffs do not allege facts demonstrating any lack of alternative but to work for Defendants; and (C) that Plaintiffs have not alleged facts speaking to any of the four means of obtaining labor that the statute protects.[58]

### A.    Group Pleading

Defendants suggest that the Plaintiffs' claim runs afoul of Federal Rule of Civil Procedure 8 because it "fail[s] to distinguish between and among the seven Defendants[.]"[59] Rule 8 requires that a claim for relief include "a short and plain statement of the claim showing that the pleader is entitled to relief."[60] This short and plain statement should "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[61] Put another way, "to state a claim in federal court, a complaint must explain what each defendant did to [the plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific right the plaintiff believes the defendant violated."[62] But that does not mean that a pleading

---

[56] 18 U.S.C. § 1589(a).

[57] *Id.* § 1595(a).

[58] Defs.' Mot. 16–19.

[59] Defs.' Mot. 17.

[60] Fed. R. Civ. P. 8(a)(2).

[61] *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[62] *See Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007).

should be dismissed, let alone with prejudice, *solely* because it groups a number of actors together. Instead, the inquiry must be whether the pleading plausibly alleges that each given actor is liable for the misconduct alleged.[63]

Here, Plaintiffs allege that all Defendants violated 18 U.S.C. § 1589 "by forcing [Sherry] to perform uncompensated labor for approximately the past ten years[.]"[64] Specifically, the Amended Complaint alleges that in 2010, Sherry began working for the Abbaszadeh brothers.[65] In the beginning, she received paychecks from them, but was paying the full amount back to them immediately.[66] This continued until at least 2014.[67] But from 2017 to 2023, Sherry worked for the entities controlled by the Abbaszadeh brothers without compensation.[68] And the Amended Complaint makes clear that Sherry worked for at least Defendants Zibaland, LLC, Highlandplex, LLC, NEDA, LLC, and SABA55, LLC during this period.[69] Accordingly, to the extent that Defendants take issue with the Amended Complaint on the basis that it alleges that all Defendants are liable for the misconduct alleged, that argument is baseless. There are sufficient factual allegations in the Amended Complaint that enable these Defendants to understand the allegations against them. However, there are no factual allegations in the Amended Complaint that suggest Sherry worked for Defendant Mega Real, LLC without compensation.

Accordingly, Plaintiffs' claim under 15 U.S.C. § 1589 is dismissed against only Mega Real on this basis.

---

[63] *See, e.g.*, *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).
[64] Am. Compl. ¶ 162.
[65] *Id.* ¶ 86.
[66] *Id.* ¶ 87.
[67] *Id.* ¶ 110.
[68] *Id.* ¶ 111.
[69] *See id.* ¶¶ 6–8, ¶¶ 109–10; *see also id.* ¶ 148.

### B.   Means of Obtaining Labor

Defendants argue that Plaintiffs have not alleged facts that plausibly support that Sherry's labor was obtained by any of the unlawful means prohibited by the statute.[70] The Amended Complaint suggests that Plaintiffs' claim is limited to 18 U.S.C. § 1589(a)(2), (3), and (4)—it does not suggest that Defendants acted in violation of (a)(1), which prohibits obtaining labor through force or threats of force.[71]

The Amended Complaint alleges that Defendants took liens on the Walkers' property for debts the Walkers did not owe.[72] They then threatened foreclosure on the Walkers' property.[73] In 2010, because of these threats, Sherry "felt compelled to become a full-time employee of Defendants."[74] Defendants "assured her" that working for them would lead to her debts being paid down.[75] While Sherry initially received a paycheck,[76] by 2017, Defendants ceased paying her "while still requiring her to work full time."[77]

The court begins with whether the allegations of the Amended Complaint state a claim under Section 1589(a)(3). That subsection prohibits a defendant from knowingly obtaining the labor of another "by means of the abuse or threatened abuse of law or legal process."[78] The term "abuse or threatened abuse of law or legal process" is defined as "the use or threatened use of law or legal process . . . in any manner or for any purpose for which the law was not designed, in

---

[70] Defs.' Mot. 18–19.
[71] *See* Am. Compl. ¶ 162.
[72] *See* Am. Compl. ¶¶ 36–108, 120–22, 134.
[73] *Id.* ¶¶ 83, 85.
[74] *Id.* ¶ 86.
[75] *Id.*
[76] *Id.* ¶¶ 87, 110.
[77] *Id.* ¶ 111.
[78] 18 U.S.C. § 1589(a)(3).

order to exert pressure on another person to cause that person to take some action or refrain from taking some action."[79] Threatening foreclosure on unlawful liens is the use of law for a purpose it was not designed. But while the Amended Complaint alleges that Defendants made some assurances to Sherry that her work for them would lead to her debts being reduced, nothing in the Amended Complaint suggests that when Defendants placed unlawful liens on the Walkers' property or threatened foreclosure, they acted with the purpose of causing Sherry to work for them or continue to work for them, as the statute requires. Accordingly, the allegations of the Amended Complaint do not state a claim under Section 1589(a)(3).

Next, the court turns to whether the allegations of the Amended Complaint state a claim under Section 1589(a)(2) and (4). Those subsections prohibit a defendant from knowingly obtaining the labor of another "by means of serious harm or threats of serious harm," or "by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm[.]"[80] The term "serious harm" is defined as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious . . . to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."[81] For starters, foreclosure is a type of potentially serious financial harm. But, for purposes of subsection (a)(4), there are again no well-pled fact allegations suggesting that any of Defendants' acts were intended to cause Sherry to believe that if she did not perform labor for them or continue

---

[79] *Id.* § 1589(c)(1).
[80] *Id.* § 1589(a)(2), (4).
[81] *Id.* § 1589(c)(2).

performing labor for them, foreclosure would necessarily occur. The inverse—assuring her that her debts would be paid down if she worked for them—is not sufficient. Next, while the statute adopts a subjective standard regarding the seriousness of harm, the court interprets the words "compel" and "in order to" as codifying Thirteenth Amendment precedent requiring that the victim feel as though they have no alternative but to provide labor or services.[82] While the Amended Complaint alleges that Sherry initially "felt compelled" to work for Defendants, and that they "required" her to continue to work for them without pay, it does not allege any facts suggesting that Sherry had no other reasonable alternatives, even taking into account her subjective point of view.

In sum, the Amended Complaint alleges that due to allegedly wrongful threats of foreclosure on her property, Sherry provided labor to Defendants, and did so for a time without pay. But the Amended Complaint is largely silent as to any facts alleging actions of Defendants that caused Sherry to feel compelled to work for them, or that they intended that result. Nor does it allege facts that give rise to a reasonable inference that Sherry felt as though she had no alternative but to work for Defendants. Conclusory assertions will not suffice. Accordingly, Plaintiffs have failed to state a plausible claim under 18 U.S.C. § 1589(a)(2), (3) and (4).

### III. State Law Claims

---

[82] *See Kozminski*, 487 U.S. at 943 ("[W]e find that in every case in which this Court has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction." (compiling caselaw)); *id.* at 948 (upholding a statute under the Thirteenth Amendment when it reflected "Congress' view that a victim's age or special vulnerability may be relevant in determining whether a particular type or certain degree of physical or legal coercion is sufficient to hold that person to involuntary servitude"); *see also Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) ("The canon of constitutional avoidance 'comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction.'" (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005))).

Defendants argue that the court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims if it dismisses Plaintiffs' federal claims.[83] 28 U.S.C. § 1367 permits district courts to exercise supplemental jurisdiction over claims that form part of the same case and controversy as claims over which they have original jurisdiction.[84] However, district courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."[85] Here, the court had federal question jurisdiction under 28 U.S.C. § 1331 pursuant to Plaintiffs' Thirteenth Amendment claim and claim under 18 U.S.C. § 1589.[86] Since the court has dismissed both claims, it declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the court does not consider the other arguments for dismissal urged by Defendants.[87]

---

[83] Defs.' Mot. 19–20.
[84] 28 U.S.C. § 1367(a).
[85] *Id.* § 1367(c).
[86] *See* Am. Compl. ¶ 11.
[87] *See* Defs.' Mot. 20–31. The court also notes that the Amended Complaint alleges that there is an ongoing state case involving the parties. *See* Am. Compl. ¶ 153. The court is unaware of whether the issues raised by Plaintiffs here have been brought to the attention of the state court.

## ORDER

The court GRANTS Defendants' motion to dismiss[88] and DISMISSES Plaintiffs' federal claims without prejudice. The court declines to exercise supplemental jurisdiction over the state law claims. Plaintiffs may seek leave to amend their pleadings within 28 days of this order.

Signed July 11, 2024.

BY THE COURT

David Barlow
United States District Judge

---

[88] ECF No. 15.