THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| STEVE WALKER; SHERRY WALKER; and APPLE STREET ONE TWENTY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MAGHSOOD ABBASZADEH; AYYOOB ABBASZADEH; SABA55 LLC; ZIBALAND, LLC; HIGHLANDPLEX, LLC; NEDA, LLC; MEGA REAL, LLC, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [35] DEFENDANTS' MOTION TO DISMISS** <br><br> Case No. 2:23-cv-00912-DBB-CMR <br><br> District Judge David Barlow <br><br> Magistrate Judge Cecilia M. Romero |

Plaintiffs Steve Walker, Sherry Walker, and Apple Street One Twenty, LLC (collectively "Plaintiffs") allege that Defendants Maghsood Abbaszadeh, Ayyoob Abbaszadeh, SABA55 LLC, Zibaland, LLC, Highlandplex, LLC, Neda LLC, and Mega Real, LLC (collectively "Defendants")[1] violated the Trafficking Victims Protection Act ("TVPA")[2] and committed a number of torts.[3] Defendants move to dismiss each of Plaintiffs' claims.[4] For the following reasons, the court grants Defendants' motion.

## BACKGROUND

Steve and Sherry Walker are a married couple who have worked in construction and construction management for many years.[5] Maghsood and Ayyoob Abbaszadeh are brothers who

---

[1] Because multiple individuals in this case share a surname, the court will refer to them by their given names, for clarity.
[2] 18 U.S.C. § 1589.
[3] *See* Second Am. Compl. ("SAC") ¶¶ 179–269, ECF No. 31, filed March 5, 2025.
[4] Defs.' Mot. to Dismiss SAC ("Defs.' Mot."), ECF No. 35.
[5] SAC ¶ 36.

own several companies, including the entity Defendants in this case.[6] Plaintiffs allege that the Abbaszadeh brothers have engaged in "acts of deceit, misleading statements, undue pressure, threats, and unwillingness to acknowledge payment" for more than two decades.[7]

In 2002, Ayyoob sold Steve an apartment complex in Oklahoma for $1,927,500.[8] Subsequently, Steve, Ayyoob, Maghsood, and Sherry formed SAMS, LLC for the purpose of buying the apartments.[9] In 2003, the parties executed a lien against the apartments for $382,000 under which Ayyoob was to receive $200,000 and Steve was to receive $182,000.[10] Next, Maghsood "induced" Steve to sign an agreement to purchase the apartment complex outright, and that Steve "unknowingly assumed" the debt related to the apartments and released his lien against the apartments.[11] There were a series of loans and related payments between the Abbaszadeh brothers and the Walkers around that same time period.[12] Then, in 2005, Maghsood placed two "unsubstantiated" liens on the Walkers' primary residence, totaling over $140,000.[13]

In 2006, the apartments were sold for over $2,000,000.[14] Steve was owed over $216,000 as part of this transaction, but was not paid; instead, Maghsood claimed that he was owed over $205,000.[15] Maghsood placed another lien on the Walkers' non-residential property for $215,000.[16] The Walkers allege that Maghsood agreed to release the two liens on their residence if they paid off the new $215,000 lien on the Walkers' non-residential property.[17] In 2007, the

---

[6] *Id.* ¶¶ 4–10.
[7] *Id.* ¶ 21.
[8] *Id.* ¶ 38.
[9] *Id.* ¶ 39.
[10] *Id.*
[11] *Id.* ¶ 41–44.
[12] *Id.* ¶¶ 38–39, 46–49, 56–59.
[13] *Id.* ¶¶ 51–52.
[14] *Id.* ¶ 61.
[15] *Id.* ¶¶ 62, 66.
[16] *Id.* ¶ 76.
[17] *Id.* ¶ 77.

Walkers sold the non-residential property and paid Maghsood $236,000, but Maghsood did not release the liens on the Walkers' primary residence.[18]

In 2009, the Abbaszadeh brothers threatened to foreclose on the Walkers' property.[19] This caused Sherry to feel compelled to become their full-time employee.[20] By 2014, Sherry was still receiving her paycheck and immediately paying a substantial amount, if not the entire amount, directly back to the Abbaszadeh brothers.[21] The Abbaszadeh brothers claimed that Sherry's work was only sufficient to pay "some interest" on her loans, but no principal.[22] Sherry believed that working for the Abbaszadeh brothers without pay was the only means of preventing any foreclosure.[23] By 2017, however, Defendants stopped paying Sherry for her work "while still requiring her to work full time."[24] This continued until 2023.[25]

In 2011, the Walkers signed a Trust Deed for $951,000.[26] According to the SAC, the Walkers signed the document without understanding it, and without being provided time to obtain counsel or review the document.[27] The Walkers believed they were signing a $272,250 loan, and that only $272,250 was distributed to them.[28] In 2014, the Trust Deed was amended to add liens for $300,000 on three Apple Street parcels and $276,147 on the Walkers' personal residence.[29] Cumulatively, the Abbaszadeh brothers had five liens on the Walkers' various assets

---

[18] *Id.* ¶¶ 78–82.
[19] *Id.* ¶ 87.
[20] *Id.* ¶ 88.
[21] *Id.* ¶ 114.
[22] *Id.* ¶ 112.
[23] *Id.* ¶ 111.
[24] *Id.* ¶ 120.
[25] *Id.*
[26] *Id.* ¶ 101.
[27] *Id.* ¶¶ 98–102.
[28] *Id.* ¶¶ 97, 101, 104, 107.
[29] *Id.* ¶¶ 127–31.

totaling a principal amount of $1,618,297.[30] The brothers allege that they are owed over $7,000,000 total.[31]

With limited income, the Walkers allege that finances have been difficult over the last several years. Yet, according to the Second Amended Complaint ("SAC"), the loan balances have never dropped despite Sherry's work for Defendants.[32] Unable to pay property taxes, companies controlled by the Abbaszadeh brothers have been doing so on behalf of Plaintiffs since at least 2011.[33] The Abbaszadeh brothers foreclosed on Plaintiffs' Apple Street property in 2023.[34]

On February 16, 2024, Plaintiffs filed their amended complaint, which alleged 13 claims: violation of the Thirteenth Amendment; violation of 18 U.S.C. § 1589 ("TVPA"); fraud; violation of the Utah Sales Representative Commission Payment Act; wrongful liens; wrongful deeds; breach of the implied covenant of good faith and fair dealing; intentional infliction of emotional distress; intentional misrepresentation; unjust enrichment; quantum meruit; civil conspiracy; and respondeat superior.[35] On July 11, 2024, the court granted Defendants' first motion to dismiss without prejudice as to Plaintiffs' federal claims and declined to exercise supplemental jurisdiction over the state law claims.[36]

On July 30, 2024, Plaintiffs filed a motion for leave to amend their complaint.[37] On February 26, 2025, Magistrate Judge Romero granted in part and denied in part the motion to amend.[38] Judge Romero denied the motion to amend in part for failing to cure deficiencies in

---

[30] *Id.* ¶ 133.
[31] *Id.* ¶ 163.
[32] *Id.* ¶ 154.
[33] *Id.* ¶¶ 110, 150, 152.
[34] *Id.* ¶ 161.
[35] Am. Compl. ¶¶ 154–251, ECF No. 13, filed February 16, 2024.
[36] Mem. Dec. & Order Granting Defs.' First Mot. to Dismiss ("Order"), ECF No. 22, filed July 11, 2024.
[37] Pls.' Mot. to Amend, ECF No. 23.
[38] J. Romero's Mem. Dec. & Order, ECF No. 29.

their Thirteenth Amendment claim (whether courts can infer a private cause of action under the Thirteenth Amendment) and granted the remainder of the motion.[39]

On March 5, 2025, Plaintiffs filed a Second Amended Complaint ("SAC").[40] On March 19, 2025, Defendants filed the instant motion to dismiss.[41] On March 31, 2025, Plaintiffs filed an opposition.[42] On April 14, 2025, Defendants filed a reply.[43]

## STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[44] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45] The court does not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[46]

## DISCUSSION

Defendants argue that Plaintiffs' TVPA claim fails as a matter of law, and therefore, that the court should decline to exercise supplemental jurisdiction over the remaining state law claims.[47] In the alternative, Defendants argue that Plaintiffs' state law claims fail as a matter of law as well.[48]

---

[39] *Id.* at 5–11.
[40] ECF No. 31.
[41] ECF No. 35.
[42] Pls.' Opp'n to Defs.' Mot. to Dismiss ("Opp'n"), ECF No. 36.
[43] Defs.' Reply in Support of Mot. to Dismiss ("Reply"), ECF No. 38.
[44] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[45] *Id.*
[46] *Id.* at 678.
[47] Mot. 14–21.
[48] *Id.* 21–36.

I.    **18 U.S.C. § 1589**

18 U.S.C. § 1589 prohibits any person from knowingly providing or obtaining the labor

or services of another person:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.[49]

18 U.S.C. § 1595 provides a civil action for violation of Section 1589.[50]

In the court's previous Order granting Defendants' first motion to dismiss, the court

stated, in part:

- "But while the Amended Complaint alleges that Defendants made some assurances to Sherry that her work for them would lead to her debts being reduced, nothing in the Amended Complaint suggests that when Defendants placed unlawful liens on the Walkers' property or threatened foreclosure, they acted with the purpose of causing Sherry to work for them or continue to work for them, as the statute requires."[51]

- "[T]here are again no well-pled fact allegations suggesting that any of the Defendants' acts were intended to cause Sherry to believe that if she did not perform labor for them or continue performing labor for them, foreclosure would necessarily occur."[52]

- "While the Amended Complaint alleges that Sherry initially 'felt compelled' to work for Defendant, and that they 'required' her to continue to work for them without pay, it does not allege any facts suggesting that Sherry had no other reasonable alternatives, even taking into account her subjective point of view."[53]

---

[49] 18 U.S.C. § 1589(a).
[50] *Id.* § 1595(a).
[51] Order 12.
[52] *Id.* at 12–13.
[53] *Id.* at 13.

6

- "[T]he Amended Complaint is largely silent as to any facts alleging actions of Defendants that caused Sherry to feel compelled to work for them, or that they intended that result. Nor does it allege facts that give rise to a reasonable inference that Sherry felt as though she had no alternative but to work for Defendants. Conclusory assertions will not suffice. Accordingly, Plaintiffs have failed to state a plausible claim under 18 U.S.C. § 1589(a)(2), (3) and (4)."[54]

In line with the court's Order, Defendants argue that Plaintiffs' SAC again fails to allege facts showing that Plaintiffs had no available choice but to work for Defendants, or that Defendants caused Mrs. Walker to feel compelled to work for them or intended that result.[55] In response, Plaintiffs do not cite a single allegation (new or old) that would satisfy the deficiencies that previously resulted in dismissal,[56] and the court is aware of none.[57]

Instead, Plaintiffs cite to two cases. First, Plaintiffs cite to the Tenth Circuit's decision in *Menocal v. GEO Grp., Inc.*,[58] for the proposition that "serious harm" under § 1589(a) can include financial harm.[59] And so it does, as the statute makes plain.[60] This same definition was quoted in the court's previous Order.[61] But Plaintiffs do not explain how *Menocal*—a decision about class certification of immigration detainees—otherwise applies to Plaintiffs' case.

Second, Plaintiffs cite to *United States v. Peterson*,[62] a 2008 criminal case from the Middle District of Georgia.[63] The sole legal question in *Peterson* was whether § 1589(a)(3) has a "coercion" requirement, as (a)(1) and (a)(2) do by their plain language.[64] Based on the court's

---

[54] *Id.*

[55] Mot. 14–19.

[56] *See* Opp'n 10–14; *see also id.* at 14 (stating that "[a]llegations include both coercion and the threatened and abused legal process accentuating said financial ruin," and citing "generally" to the SAC).

[57] Plaintiffs also stress the fact that the SAC must be sufficient because it is over 50 pages long and contains over 44 exhibits. Opp'n 9–10. Length is not the standard for stating a plausible claim for relief. Moreover, the amended complaint was also over 50 pages long and contained the same exhibits. *See generally* Am. Compl.

[58] 882 F.3d 905, 916 (10th Cir. 2018).

[59] Opp'n 10.

[60] *See* 18 U.S.C. § 1589(c)(2).

[61] Order 12.

[62] 627 F. Supp. 2d 1359 (M.D. Ga 2008).

[63] Opp'n 11–13.

[64] *Peterson*, 627 F. Supp. 2d at 1371.

reading of the language and overall statutory scheme, the court concluded that § 1589(a)(3) does require a showing of coercion.[65]

Based on *Peterson*, Plaintiffs argue that coercion is the proper standard, and there is no requirement of "having no other reasonable alternatives."[66] But Plaintiffs do not explain how there is a meaningful difference between the terms in this context. The court in *Peterson* cited to Black's Law Dictionary in defining coercion as "*compulsion* by physical force or threat of physical force."[67] The court already interpreted "compel" and "in order to" as requiring that the victim feel as though they have no alternative but to provide labor or services.[68] Therefore, *Peterson* provides no meaningful support for Plaintiffs' position. Even if it did, *Peterson* is not binding authority.

Lastly, it is worth mentioning that Plaintiffs' SAC also alleges that Defendants violated § 1589(a)(1)[69] by requiring labor from Sherry Walker by means and threats of force including that if Sherry Walker did not work for the Defendants, then they would cause financial ruin for the Walkers.[70] Plaintiffs provide no factual enhancement in support of this claim.[71] The court finds that Plaintiffs fail to state a claim under subsection (a)(1) for the same reasons as articulated above—namely that Plaintiffs did not plausibly show that Sherry had no available choice but to work for Defendants. Additionally, subsection (a)(1)'s reference to "force" applies

---

[65] *Id.*
[66] Opp'n 14.
[67] *Peterson*, 627 F. Supp. 2d at 1371 (emphasis added).
[68] Order 13; *see also Muchira v. Al-Rawaf*, 850 F.3d 605, 618–20 (4th Cir. 2017) (no TVPA violation where Kenyan live-in housemaid could have left employment); *United States v. Calimlim*, 538 F.3d 706, 712 (7th Cir. 2008) (distinguishing situation where alleged victim could quit and change jobs, which would not support a TVPA claim, with the case at hand where the victim "did not have an exit option" because the threats involved her immigration status and "she could not freely work for another employer in order to escape the threatened harm").
[69] Subsection (a)(1) concerns people who knowingly provide or obtain the labor or services of a person "by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person."
[70] SAC ¶ 168.
[71] *See* Opp'n 10–14.

to acts and threats of *physical* force, as opposed to the financial harm covered under subsections (a)(2) and (a)(4).[72]

Accordingly, Plaintiffs have failed to state a plausible claim under 18 U.S.C. § 1589(a)(1), (2), (3) and (4). Plaintiffs' SAC failed to correct any of the deficiencies the court identified in dismissing the previous Amended Complaint. Specifically, Plaintiffs did not show that Mrs. Walker had no available choice but to work for Defendants and instead argued that this is not required. Plaintiffs also came no closer to plausibly alleging that Defendants caused Mrs. Walker to feel compelled to work for them or intended that result. They further failed to identify any new allegation in the SAC addressing the issues that required the dismissal of the Amended Complaint. As such, the court concludes that allowing further amendments would be futile.

## II.    State Law Claims

Defendants argue that the court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims if it dismisses Plaintiffs' federal claims.[73] 28 U.S.C. § 1367 permits district courts to exercise supplemental jurisdiction over claims that form part of the same case and controversy as claims over which they have original jurisdiction.[74] However, district courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."[75] In fact, the Tenth Circuit has expressed a preference that district courts, when they dismiss all federal claims, typically should decline to exercise supplemental jurisdiction over state law claims.[76]

---

[72] *See generally United States v. Magleby*, 420 F.3d 1136, 1142 (10th Cir. 2005) (upholding jury instruction interpreting force under 42 U.S.C. § 3631 to depict physical violence or the threat thereof).
[73] Mot. 19–21.
[74] 28 U.S.C. § 1367(a).
[75] *Id.* § 1367(c).
[76] *See Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

Here, the court had federal question jurisdiction under 18 U.S.C. § 1589.[77] Since the court has dismissed this claim, it declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the court does not consider the other arguments for dismissal urged by Defendants.[78]

## ORDER

The court GRANTS Defendants' motion to dismiss[79] Plaintiffs' Second Amended Complaint and DISMISSES Plaintiffs' § 1589 claim with prejudice. The court declines to exercise supplemental jurisdiction over the state law claims. The Clerk of Court is DIRECTED to close this case.

Signed June 3, 2025.

BY THE COURT

David Barlow
United States District Judge

---

[77] *See* SAC ¶ 11.
[78] *See* Defs.' Mot. 21–36.
[79] ECF No. 35.